1  David M. Birka-White, CA SBN 85721
       dbw@birka-white.com
2  **BIRKA-WHITE LAW OFFICES**
   178 E. Prospect Avenue
3  Danville, California 94526
   (925) 362-9999 (tel.) / (925) 362-9970 (fax)
4
   Daniel L. Rottinghaus, CA SBN 131949
5      drottinghaus@berdingweil.com
   Scott M. Mackey, CA SBN 222217
6      smackey@berdingweil.com
   **BERDING & WEIL LLP**
7  2175 N. California Blvd, Suite 500
   Walnut Creek, California 94596
8  925/838-2090 (tel.) / 925/820-5592 (fax)
9  Charles E. Schaffer, PA SBN 76259
       cschaffer@lfsblaw.com
10 **LEVIN SEDRAN & BERMAN**
   510 Walnut Street, 5th Floor
11 Philadelphia, Pennsylvania 19106
   (215) 592-1500 (tel.) / (215) 592-4663 (fax)
12
13 Attorneys for Plaintiff EDWARD P. CLIFFORD,
   on behalf of himself and all others similarly situated
14
15              **UNITED STATES DISTRICT COURT**
16
17             **SOUTHERN DISTRICT OF CALIFORNIA**
18
19 EDWARD P. CLIFFORD, on behalf of     Case No. **'25CV1286 BJC  DDL**
   himself and all others similarly situated,    **CLASS ACTION**
20
21              Plaintiffs,
                                         **COMPLAINT FOR DAMAGES**
22        vs.                            **AND INJUNCTIVE RELIEF**
23
   UPONOR, INC; and DOES 1 through
24 100, inclusive, whose true names are
   unknown,
25
26         Defendants.            /      **DEMAND FOR JURY TRIAL**
27
28

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION                                                                    1

II.     PARTIES                                                                        3
        A. Plaintiff                                                                   3
        B. Injury in Fact                                                              5
        C. The Uponor Pex Pipe must be Removed and Replaced                            5
        D. Defendant                                                                   7

III.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT                              7

IV.     GENERAL FACTUAL ALLEGATIONS REGARDING THE
        UPONOR PEX DEFECTS                                                             8

        A. Root Cause of the UPONOR PEX Pipe Defects                                   8

        B. Flame Treatment for Red and Blue Pipe Creates Additional Defects           10

        C. The Fitting Installation Design System Causes Further Degradation
           of the Defective Pipe                                                      10

        D. The Uponor Method of Producing PEX Pipe                                    11

        E. Life Expectancy of the UPONOR PEX Pipe                                     15

        F. Promotional Representations                                                15

        G. False Representations and Omissions                                        16

V.      THE SIGNATURE LEAKS                                                           17

        A.  Leaks Adjacent to the Fittings                                            17

        B.  Leaks in the Wall of the Pipe Away from the Fitting                       22

        C.  Property Damage                                                           25

VI.     JUDICIAL SUMMARY OF THE ROOT CAUSE OF
        THE FAILURES                                                                  29

VII.    INSTALLATION PRACTICES DO NOT CAUSE THE DEFECTS                               30

VIII.   UPONOR IAPMO CERTIFICATE OF LISTING                                           31

IX.     WATER TEMPERATURE AND WATER PRESSURE IN THE
        SYSTEM DO NOT CAUSE LEAKS IN THE CLASS PIPE                                   32

X.      UPONOR PEX PIPE IS DESIGNED TO BEND AND BENDING
        THE PIPE DOES NOT CAUSE IT TO CRACK AND LEAK                                  33

XI.    UPONOR HAS LITIGATED MANY LAWSUITS AND SETTLED MANY COMPLAINTS RELATING TO THE DEFECTIVE CLASS PIPE ............................................................. 34

XII.   UPONOR HAS FULL KNOWLEDGE ABOUT THOUSANDS OF REPORTED LEAKS IN THE CLASS PIPE ......................... 36

XIII.  DESPITE ITS KNOWLEDGE, UPONOR MISREPRESENTED AND CONCEALED IMPORTANT INFORMATION ABOUT THE CLASS PIPE DEFECT ....................................................... 36

XIV.   UPONOR PUBLISHED DESIGN AND PLUMBING INSTALLATION MANUALS FOR THE CLASS PIPE THAT DETAILED THE DURABILITY AND SAFETY FEATURES BUT DID NOT DISCLOSE THE OXIDATION DEFECT ..................................... 38

XV.    THE DESIGN DEFECTS IN THE UPONOR PEX PIPE ARE THE SOLE CAUSE OF THE LEAKS ................................................ 39

XVI.   CLASS ACTION ALLEGATIONS ......................................... 40

       A. The Class Definition ......................................................... 41

       B. Ascertainability ................................................................ 42

       C. Numerosity: Federal Rule of Civil Procedure 23(a)(1) ... 47

       D. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) ...................................... 48

       E. Typicality: Federal Rule of Civil Procedure 23(a)(3) ...... 49

       F. Adequacy: Federal Rule of Civil Procedure 23(a)(4) ...... 50

       G. Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2) ........................................................ 50

       H. Superiority: Federal Rule of Civil Procedure 23(b)(3) .... 50

XVII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED ... 51

XVIII. CAUSES OF ACTION ......................................................... 55

       Count I: Violations of the California Unfair Competition Law ... 56

       Count II: Violation of California Consumers Legal Remedies Act ... 58

       Count III: Violations of the California False Advertising Law ... 60

       Count IV: Fraud By Concealment  (Common Law) .............. 63

       Count V: Unjust Enrichment  (Common Law) .................... 65

       Count VI: Negligence ..................................................... 67

       Count VII: Strict Product Liability .................................. 69

XIX.    PRAYER FOR RELIEF                                      70

XX.     DEMAND FOR JURY TRIAL                                  71

TABLE OF CONTENTS OF EXHIBITS                                  73
        Exhibit A 001-002: Plaintiff's CLRA Venue Affidavit

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, individually and on behalf of all others similarly situated (the "Putative Class"), alleges the following against Uponor, Inc. ("UPONOR") based, where applicable, on personal knowledge, information and belief, and the investigation of counsel and its experts.

I.    **INTRODUCTION**

1.    This case involves the UPONOR AquaPEX piping systems ("UPONOR PEX"), which includes plastic piping, reinforcement rings and fittings manufactured and sold by Defendant Uponor, Inc. ("UPONOR") UPONOR PEX pipe is a plastic potable water supply piping product that is manufactured in three colors: Red, White and Blue, all of which are the subject of this lawsuit.

2.    PEX is an acronym for cross-linked polyethylene. The "PE" refers to the PEX polyethylene raw material used to make the PEX pipe, and the "X" refers to cross-linking the polyethylene across the molecular chain.

3.    The UPONOR PEX Red, White and Blue pipe is referred to herein as the "UPONOR PEX pipe" or "Class Pipe."  The term UPONOR PEX pipe and Class Pipe are used interchangeably herein.

4.    The UPONOR PEX pipe includes Red, White and Blue pipe manufactured from approximately 2010 to 2021.   On information and belief, UPONOR discontinued the manufacture of Red and Blue pipe in 2021.

5.    For ease of identification during installation, the Red and Blue pipe have a colored non-PEX coating to provide color.  Red UPONOR PEX pipe is used for hot water and Blue UPONOR PEX pipe is used for cold water.

6.    White UPONOR PEX pipe is for both hot and cold water.

7.    All UPONOR PEX pipe, whether Red, White or Blue, uses the identical formula and extrusion process.  White, Red and Blue UPONOR PEX pipe are functionally identical and fully interchangeable.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

8.      UPONOR piping is designed for use in potable water supply applications for single-family homes, townhomes, apartments, condominiums and other building types. ***The class definition in this case is limited to single family residences***. (See paragraph 181).

9.      The UPONOR PEX piping is used in residential properties for, among other applications:

• Potable hot-and cold-water, distribution

• Hot water circulation lines

• Fire protection systems

• Closed-loop hydronic radiant heating (radiant floor and baseboard)

10.      On information and belief, UPONOR has sold millions of feet of UPONOR PEX pipe during the Class period which was installed in thousands of homes in California.

11.      ***Consumers expect that a residential potable water piping system will last the equivalent of a lifetime, and UPONOR claims that the Class Pipe will last 50 to 100 years***.

12.      Generally, the UPONOR pipe that is the subject of this lawsuit will crack and leak within three to 10 years after installation. The defects are continuing and progressive, cannot be reversed, and the pipe will continue to fail.

13.      Polyethylene is vulnerable to oxidation.

14.      When oxygen combines chemically with the UPONOR PEX pipe, the pipe will oxidize and degrade.

15.      To prevent premature degradation, UPONOR blends antioxidant additives with the polyethylene during production. These antioxidants are intended to scavenge free radicals and protect the polymer chains.

16.      The Uponor method of pipe production does not mix the antioxidants uniformly with the polyethene which leads to a lack of homogeneity with the distribution of the antioxidants, and causes the pipe to suffer from a defect.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

17.    Lack of homogeneity results in areas of the polymer with less antioxidant protection.  These less-protected areas lead to oxidation of the pipe.  This condition further leads to cracks and leaks.

18.    UPONOR has long been aware of the process of oxidation and their root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors,  installers or building officials.

## II.    PARTIES

### A.    Plaintiff

19.    Edward P. Clifford ("Plaintiff") and his wife purchased their home in 2003. Their home is located at 5147 Bella Collina Street, Oceanside, California. The potable water supply pipe in their home was originally copper.

20.    During about January, 2015, Integrity Repipe, Inc. ("Integrity Repipe") replaced the copper pipe in Plaintiff's home with the Class Pipe at a cost of $9,000.00.

21.    Integrity Repipe purchased the pipe from Ferguson Enterprises, Inc., which is one of the largest distributors of UPONOR PEX pipe nationwide.

22.    Beginning in October, 2022, Plaintiff's property has had three separate leaks in the UPONOR PEX pipe.

23.    The first water leak took place on or about October 27, 2022. UPONOR was made aware of this leak by Plaintiff's plumber Integrity Repipe.

24.    The site inspection was requested by Integrity Repipe.  Integrity Repipe was present at the inspection.  On February 7, 2023 a site inspection was performed at Plaintiff's home by UPONOR representative Nick Bowers.

25.    Integrity Repipe requested that UPONOR reimburse it for its out of pocket expenses for having repaired the leaking UPONOR PEX pipe and the resulting property damage at Plaintiff's home.

26.    UPONOR denied the request of Integrity Repipe for reimbursement based on the false pretense that the water pressure *in the hot water tank* (not the pipe itself) was too high. In fact, all of the  water  pressure  measured  by  UPONOR

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

representative Nick Bowers at any fixture throughout the house, including hose bibs, was below 80 PSI, and all water temperature was below 120°F, both of which are in compliance with the Uniform Plumbing Code which is adopted by the State of California.

27.    Furthermore, temperature and PSI at Plaintiff's property were far below the levels which UPONOR expressly asserts the pipe can tolerate, namely 100 PSI at 180°F.

28.    The leaks at Plaintiff's home were not caused by excessive temperature or pressure, because the temperature and pressure were well below the allowable tolerances of the UPONOR PEX pipes maintained by UPONOR itself.

29.    At UPONOR's request, Integrity Repipe mailed a sample of Plaintiff's cracked pipe to UPONOR. The sample consisted of a pipe failure in Red pipe away from the fitting.

30.    Subsequently, Integrity Repipe requested the return of the failed sample provided to UPONOR. UPONOR failed to return the sample to Integrity Repipe after it was requested.

31.    Plaintiff does not know the current whereabouts of the failed pipe sample from his home now in UPONOR's possession. Plaintiff will seek discovery on this issue and will further seek the return of Plaintiff's failed pipe sample.

32.    There were no plumbing installation errors at Plaintiff's home as demonstrated by UPONOR's own inspection of Plaintiff's potable water system. *As described hereinafter, even if UPONOR asserts there were installation errors, any such deficiencies cannot, and do not, cause the oxidative degradation failures of the Class Pipe experienced at Plaintiff's residence, which is solely related and unique to the defective manufacturing process.*

/ / /

/ / /

/ / /

**B.      Injury in Fact**

33.     The leaking pipe in Plaintiff's home caused property damage to insulation, drywall and paint.  The leaking portion of the UPONOR PEX pipe was removed and replaced by Integrity Repipe.  Integrity Repipe also repaired the property damage caused by the leaks at the expense of Integrity Repipe.

34.     Plaintiff paid for the paint to repaint the replaced drywall and thereby incurred out of pocket expenses and loss of property constituting injury in fact. Plaintiff personally repainted the portions of the drywall that had been replaced.

35.     The repainting performed by Plaintiff was temporary because it only covered the replaced drywall installed in the areas of the leaks. Further repainting is required in the kitchen, dining area and TV room.

36.     Plaintiff will make the necessary arrangements for a painting contractor to complete the repainting of walls and ceilings.  In doing so, Plaintiff will incur additional expenditures for labor and materials which will result in further damage to Plaintiff and will constitute further injury in fact.

**C.      The UPONOR PEX Pipe Must be Removed and Replaced**

37.     Plaintiff has reasonably decided that all of the Class Pipe in his home must be removed and replaced to avoid further leaks and resulting property damage. Plaintiff is in the process of securing a contractor to replace all UPONOR PEX pipe in his residence.

38.     Plaintiff's damages will include further out of pocket expenses for the labor and materials necessary to remove and replace all UPONOR PEX pipe, reinforcement rings and fittings and drywall in his home, and to repaint the repaired rooms. The repainting is necessary in order to properly match all of the repaired areas with the rest of the ceiling and walls.

39.     Plaintiff, and all Putative Class members must remove and replace the UPONOR PEX plumbing systems in their homes.  Replacement of the UPONOR PEX pipe is the only means to mitigate further property damage.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

40.    Plaintiff will prove at trial, based upon a preponderance of established and reliable scientific evidence, that the pipe will continue to deteriorate and develop leaks.    The defects are continuing and progressive and cannot be reversed or corrected.

41.    The Class Pipe contained design and manufacturing defects at the time Integrity Repipe purchased the pipe from Ferguson on behalf of Plaintiff. At the time of purchase, Plaintiff and, in turn, all Putative Class members reasonably expected that Class Pipe would reliably function as water supply pipe and had no way of knowing that it contained defects that would cause the pipe to crack, leak and fail prematurely.

42.    UPONOR concealed the existence of the defects in the Class Pipe from all Putative Class members, including Plaintiff.

43.    ***Plaintiff, and the Putative Class, would not have purchased the Class Pipe* if** UPONOR had not concealed material information about the defects.

44.    UPONOR is well aware that the failures of the UPONOR PEX pipe at Plaintiff's home are not related to installation problems or improper use by Plaintiff. The leaks at Plaintiff's home are solely attributable to defects in the UPONOR PEX pipe.

45.    ***Plaintiff never received an Express Warranty from UPONOR***.

46.    ***Plaintiff has not asserted a claim under UPONOR's express warranty and has not requested or received any compensation from UPONOR under the terms of any UPONOR Express Warranty.***

47.    ***The request made by Integrity Repipe to UPONOR for reimbursement of its costs to repair portions of Plaintiff's property damage was refused by UPONOR.  This request for reimbursement by Integrity Repipe was not a warranty claim on behalf of Plaintiff.***

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### D. **Defendant**

48.     Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor, Inc. designed, manufactured, marketed/advertised, sold and/or distributed UPONOR PEX pipe for use in residential water plumbing systems in California and throughout the United States, both directly and indirectly, to Plaintiff and Putative Class members by and through their employees, agents, including distributors who in turn sold to developers, contractors and plumbing installers of the Class Pipe, who in turn sold the pipe to Plaintiff and all Putative Class members.

49.     The causes of action in this Complaint are directed to Uponor, Inc. and are based on its misconduct, all alleged herein.

50.     On information and belief, Uponor Corporation is the parent company of both Uponor North America, Inc. and Defendant Uponor, Inc.

51.     On information and belief, Uponor Corporation wholly owns Uponor North America, Inc. and Uponor North America, Inc. wholly owns Defendant Uponor, Inc.

52.     At this time, Plaintiff has insufficient knowledge to allege that these holding companies were involved in the design, manufacture or sale of the UPONOR PEX pipe.  Also, Plaintiff lacks sufficient facts to provide detailed allegations that these companies shared in the profits received by Defendant UPONOR, Inc. for the sale of the UPONOR PEX pipe and piping system.

53.     Plaintiff requests permission to seek discovery against Uponor North America, Inc. and Uponor Corporation to establish a showing of jurisdiction in order to assert causes of action for their wrongful conduct, if appropriate and supported by the evidence.

### III.     **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

54.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Putative Class member is of diverse citizenship from one Defendant, there are more than 100 Putative Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

55.     This Court has personal jurisdiction over Defendant Uponor, Inc. under California Code of Civil Procedure section 410.10.

56.     Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper in this division of the Southern District, because a substantial part of the events or omissions which give rise to the claims occurred in this District, and because Defendant has caused harm to Putative Class members residing in this District, including Plaintiff. UPONOR conducts substantial business, including through numerous distributors, and marketed, advertised and sold Class Pipe in this District.

57.     Plaintiff has sustained direct injury and out of pocket expenses to repair damages caused by leaks from the UPONOR PEX pipe.

58.     Plaintiff is also immediately in danger of sustaining further direct injury because the threat of more pipe failure is real and immediate and not conjectural or hypothetical.

59.     There is a direct causal relationship between the damage suffered by Plaintiff and his claims against Defendant.  There is a strong likelihood that the injury will be redressed by a favorable decision.

60.     The named Plaintiff seeks to represent a class and has alleged and shown that he has suffered resulting property damage, and injury in fact, from the defective and failed UPONOR PEX pipe installed in his residence.

## IV.    <u>GENERAL FACTUAL ALLEGATIONS REGARDING THE UPONOR PEX DEFECTS</u>

### A.    Root Cause of the UPONOR PEX Pipe Defects

61.     The overarching defect in the UPONOR PEX pipe is caused by *oxidative degradation* in the pipe.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

62.     UPONOR uses the Engle method of cross linking the polyethylene. When using the Engle method, the pipe is extruded while cross-linking is actively taking place. Specifically, the polyethylene used to manufacture the UPONOR PEX pipe is exposed to high temperatures and oxygen during the manufacturing process.

63.     High heat and reactive chemistry during extrusion of the UPONOR PEX pipe consumes antioxidants prematurely. The initial manufacturing process subjects the polymer to high heat when the polyethylene reacts with oxygen creating oxidized polyethylene.  This creates imperfections on the inside surface of the Class Pipe.

64.     Furthermore, because portions of the pipe become oxidized, the surface no longer resembles polyethylene, but becomes a new polymer surface known as oxidized polyethylene.

65.     This new material has different properties than polyethylene.  It has different physical and chemical properties, and it has a different surface tension and a different density.

66.     The oxidized polyethylene begins to shrink and develop surface imperfections, similar to the "mud cracking" that forms after a puddle dries in the sun.  Those imperfections or microcracks result in stress concentrations and form cracks that ultimately propagate through the wall of a pipe.

67.     The oxidation of the UPONOR PEX pipe is caused by a chemical reaction ***when oxygen molecules interact with the polyethene***, causing the material to break down and degrade. This leads to brittleness and loss of material properties including strength and flexibility.

68.     This condition causes the UPONOR PEX pipe to prematurely age through introduction of oxygen into the molecular structure. Once initiated, this process of oxidative degradation is significantly accelerated by exposure to normal hot water temperatures, and air, which accelerates the oxidative process and embrittles the pipe causing it to lose mechanical properties and crack.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**B.    Flame Treatment for Red and Blue Pipe Creates Additional Defects**

69.    The oxidative degradation in the UPONOR PEX pipe is compounded in the Red and Blue pipe.  With the Red and Blue pipe, UPONOR applies a lacquered coating to provide color over the PEX layer of pipe. To improve the ability of the lacquer coating to adhere, the pipe is run through a furnace at high temperatures.

70.    As a result of subjecting the pipe surface to the flame treatment and resulting high temperatures, the outside surface of the Class Pipe prematurely becomes brittle and develops microcracks in the exterior wall of the pipe.

71.    The embrittlement and microcracks cause damage to the pipe, and the cracks continue to grow and spread over time, progressively propagating through the wall of the pipe, causing resultant leaks, and resulting property damage.

72.    UPONOR refers to the coating process as a lacquer coating.  This process was discontinued in 2021, at which time UPONOR ceased the manufacture and sale of Red and Blue PEX pipe.

**C.    The Fitting Installation Design System Causes Further Degradation of the Defective Pipe**

73.    The oxidative degradation defect is further exacerbated by the fitting installation design system. The UPONOR installation design system requires that the inside diameter of the pipe be expanded while the pipe is cold (cold-expanded) and stretched with a tool in order to insert the fittings.

74.    When the pipe retracts over the fittings, the fittings remain larger than the inside diameter of the pipe, and therefore, the pipe does not return to its original size.

75.    This creates stress concentration at the edge of the reinforcement ring that is installed over the fittings.  Years after installation, this stress leads to through-wall cracks in the pipe just outside the reinforcement rings and causes leaks and resulting property damage.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

76.    Because UPONOR utilizes a defective manufacturing process for its pipe, latent defects are manufactured into all UPONOR PEX pipe.

77.    These defects lead to leaks and resulting property damage, and present serious health and safety risks including mold, bacteria, dropped ceilings due to water absorption and damage to building foundations and footings.

78.    ***This case does not involve any claims related to personal injuries***.

**D.    The Uponor Method of Producing PEX Pipe**

79.    Several methods exist to crosslink polyethylene to manufacture PEX pipe. These methods create PEX pipe with very different properties. Uponor manufactures PEX piping using the Engel-method, a hot crosslinking process.

80.    The Uponor-method of pipe production does not produce consistent, uniform and evenly cross-linked PEX pipe and the antioxidants in the pipe formula are not blended homogenously throughout the pipe.

81.    The Class Pipe is uniformly defective when it leaves the manufacturing plant.

82.    Forensic testing has been conducted on portions of the failed UPONOR PEX pipe from Plaintiff's property. The below figures depict cracks in portions of UPONOR PEX pipe installed in Plaintiff's house, including microscopic images of "mud cracking" in the coating surface, the crack initiation point, and slow crack growth.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    83.    *Below is a photograph of the surface "mud cracking" in a portion of*
2    *Plaintiff's failed pipe.*



17    / / /
18    / / /
19    / / /
20    / / /
21    / / /
22    / / /
23    / / /
24    / / /
25    / / /
26    / / /
27    / / /
28    / / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 12 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**Figure 4.** The side with the failed pipe was completely sectioned and the crack opened for microscopic analysis. Tip of the arrow indicates location that was subjected to SEM analysis.

19    / / /
20    / / /
21    / / /
22    / / /
23    / / /
24    / / /
25    / / /
26    / / /
27    / / /
28    / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Figure 5. Microscopic image of the coating surface revealing severe pitting and crazing of the coating. The SEM image shows an exemplary representation of the craters/pits in the brittle coating.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999



Figure 7. SEM image of the fracture surface showing cyclic fatigue striations on the fracture and appearance of mud cracking on the brittle coating.

84.    Plaintiff's UPONOR PEX pipe, and the pipe of the Putative Class members have the above-described built-in defects that cannot be caused by poor installation practices or use of the UPONOR PEX pipe by the owner of the property.

**E.    Life Expectancy of the UPONOR PEX Pipe**

85.    UPONOR claims and advertises that UPONOR PEX pipe has a life expectancy of at least 50 years. UPONOR also claims that it currently holds the unofficial world record for long-term testing at elevated temperatures and pressure. UPONOR further claims that its testing data indicates a life expectancy of well over 100 years. ***In reality, the Class Pipe is known to degrade and leak within a few years after installation.***

**F.    Promotional Representations**

86.    In promotional and instructional materials, UPONOR maintained that its UPONOR PEX pipe is superior to other types of PEX pipe and is durable, reliable, and safe. UPONOR has not corrected its representations about the Class Pipe's characteristics in the face of many complaints about failed UPONOR PEX pipe.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

87.    Instead, UPONOR has repeatedly touted the durability and reliability of the UPONOR PEX pipe and assured all developers, installers, building officials and consumers that they could reply upon the pipe being of high quality.

88.    UPONOR has long been aware of these defects and their root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors, installers or building officials.

89.    Defendant is further aware of thousands of failures in the UPONOR PEX Pipe that have resulted in leaks and resulting property damage.

**G.    False Representations and Omissions**

90.    These representations were and are false and misleading because of what they fail to say: that the UPONOR PEX pipe was and remains predisposed to premature failure due to oxidative degradation, and ***that the defects are progressive in nature and cannot be corrected***.

91.    On information and belief, Plaintiff alleges that for many years, UPONOR has generated its own test results that determined through scientific testing the root cause of the defects in its pipe and fitting installation system.

92.    UPONOR nonetheless continued to sell the defective Class Pipe knowing that it would have serious consequences to Plaintiff and Putative Class members in the form of failed pipe, resulting property damage, and the need to replace their plumbing system.

93.    Before manufacturing advertising/marketing, distributing and selling UPONOR PEX, Defendant failed to take appropriate steps to design and manufacture its product to be free from defects.

94.    To the extent that Defendant made any changes to any formula or processing between 2010 to the present in manufacturing the Class Pipe, those changes did not correct or eliminate the defects in the Class Pipe.  The defects remain uniform to all Class Pipe.

/ / /

95.    Defendant knew or should have known that the Class Pipe as designed and manufactured was not suitable for use in potable water supply systems.

96.    UPONOR has long been aware of these defects and their root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors, installers or building officials.

97.    Plaintiff seeks relief for damages sustained by Plaintiff and the Putative Class that Defendant proximately caused by the products defects, and sale of the Class Pipe.

98.    This class action for damages and other relief is asserted pursuant to Federal Rule of Civil Procedure 23 on behalf of all Putative Class members in California whose *residential properties contain UPONOR PEX pipe*.   The class definition is set forth in paragraph 181.

## V.    THE SIGNATURE LEAKS

99.    ***The UPONOR PEX pipe suffers from inherent defects that manifest with "signature leaks" inherent to the pipe and cannot be caused by installation practices.***

### A.    Leaks Adjacent to the Fittings

100.    Below are four photographs of "signature leaks" in the Class Pipe adjacent to the reinforcement ring that attaches over a fitting joint. (See Images 1 through 4 below.)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 17 -

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



Uponor reinforcement ring

Image 1 – Representative Uponor  PEX Red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Image 2 – Representative Uponor PEX White pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Image 3 – Representative Uponor PEX red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 4 – Representative Uponor PEX blue pipe with leak just outside the Uponor ProPEX reinforcement ring over the fitting

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Leaks in the Wall of the Pipe Away from the Fitting**

101.   Below are three photographs of longitudinal cracking in the body of pipe away from the fitting. See Images 5 through 7 below.



Image 5 – Representative Cracked and leaking Uponor PEX white pipe away from fitting

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  / / /
28  / / /



Image 6 – Cracked and leaking Uponor PEX red pipe away from fitting at Plaintiff's home

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999



Image 7- Representative cracked and leaking Uponor PEX white pipe away from fitting

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

102.   The previous photographs depict the primary "***signature***" failure mechanisms of UPONOR PEX pipe, that lead to through-wall cracking of the Class Pipe. ***Poor installation practices will not cause these defects in the Class Pipe and perfect installation practices will not prevent them.***

C.   **Property Damage**

103.   The leaks in the Class Pipe cause property damage to, among other things, drywall, insulation, paint and flooring.  See Images 8 through 11 below for representative examples of resulting property damage from leaks in the Class Pipe.



Image 8- Saturated drywall from Uponor PEX pipe leak

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Image 9 –
Water leaking from Uponor PEX pipe through ceiling into garbage can

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



Image 10 - Partially removed water damaged drywall to expose leak from Uponor PEX pipe leak

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Image 11- Property damage to drywall and insulation from Uponor PEX pipe leak

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1 | **VI.    JUDICIAL SUMMARY OF THE ROOT CAUSE OF THE FAILURES**

2 | 104.    The common failure modality in UPONOR PEX pipe is caused by

3 | oxidative embrittlement and degradation of the inside surface of the UPONOR PEX

4 | pipe as a consequence of poor distribution and extraction of protective antioxidants

5 | resulting in material degradation and oxidation of the ***inside wall of the pipe***.

6 | 105.    Antioxidants protect the pipe from oxidation by scavenging free

7 | radicals. Once the antioxidants are depleted, the surface of the pipe progressively

8 | undergoes oxidative embrittlement.

9 | 106.    This condition is compounded and made worse in the Red and Blue

10 | pipe. UPONOR'S patent application of the color coating uses a flame treatment

11 | which destroys antioxidants on the outside surface of the UPONOR PEX pipe.

12 | 107.    The color coated surface of the pipe experiences, extensive

13 | embrittlement evidenced by mud cracking, pitting, and crazing which produces a

14 | network of fine cracks on the surface of the pipe.

15 | 108.    Because of the oxidative degradation and embrittlement, the UPONOR

16 | PEX pipe is unable to withstand the strain of the expansion process specified in

17 | Uponor fitting installation design system.

18 | 109.    With the Red and Blue UPONOR PEX pipe, the failures are initiated by

19 | oxidative embrittlement and degradation on the outside surface of the pipe.

20 | 110.    The Uponor PEX pipe fails outside-in,  adjacent to the compression ring

21 | of the expansion fitting.

22 | 111.    The surface underneath the brittle coating is also brittle and experiences

23 | incipient cracks.

24 | 112.    The causes of the surface defects, both inside and outside the pipe

25 | transform over time into incipient cracks, which then propagate by normal use of the

26 | potable water system.

27 | / / /

28 | / / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 29 -
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VII. __INSTALLATION PRACTICES DO NOT CAUSE THE DEFECTS__

113.   UPONOR certifies and qualifies plumbers to install the Class Pipe. This means that plumbers who install UPONOR PEX pipe are trained and approved *before* installing any UPONOR PEX system.

114.   On information and belief, even though the plumbers have been certified by UPONOR as being qualified and competent to install the Class Pipe tubing and fittings, UPONOR has advanced the false narrative of "blame the plumber" to deny legitimate consumer complaints against UPONOR who have experienced failed pipe with resulting property damage.

115.   For example, Plaintiff's plumber Integrity Repipe has installed at least 3,000 UPONOR PEX systems in residential properties.  The owner of Integrity Repipe, Joe Ludlow, has been a plumber for over 30 years and is highly experienced with installing UPONOR PEX systems.  Mr. Ludlow has been licensed as a plumbing contractor in the State of California for approximately 15 years.  During on or about 2010, Mr. Ludlow was certified by UPONOR as an authorized and trained installer of UPONOR PEX systems.

116.   Mr. Ludlow has observed dozens of leaks in UPONOR PEX pipes at various properties.  The leaks observed by Mr. Ludlow manifest as described above, either just outside the reinforcement ring at the fitting, or in the body of the pipe away from the fitting.  The leaks at Plaintiff's home have manifested in precisely this way and are common to UPONOR PEX pipe failures. The leaks in Plaintiff's UPONOR PEX pipe had nothing whatsoever to do with the installation practices of Integrity Repipe.

117.   Also, the failures in the Class Pipe have nothing to do with excessive temperature of the water or excessive water pressure – another false narrative often employed by UPONOR as a sham defense to cover up the defects in the pipe.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

118.    There is nothing that the plumber does or can do in the course of installing the Class Pipe tubing that can cause oxidation of the interior or exterior wall of the pipe.

119.    ***Failure from oxidation degradation are unique and uniform in appearance and cause.  Poor installation, no matter how unlikely, cannot cause the signature failure modality of cracking in the wall of the pipe away from the fitting, or cracking just outside the reinforcement rings.***

120.    ***Similarly, perfect installation will not prevent the defects from manifesting. These defects are solely due to the defective manufacturering process***.

## VIII.   UPONOR IAPMO CERTIFICATE OF LISTING

121.    The Uniform Plumbing Code requires that all plumbing materials be listed with a third-party certification body before the product can be sold.

122.    UPONOR is listed with the International Association of Plumbing and Mechanical Officials (IAPMO) for its Crosslinked Polyethylene Water Distribution System (PEX).

123.    The IAPMO Research and Testing, Inc. Certificate of Listing provides as follows:

> **CHARACTERISTICS**:
>
> Cross-linked polyethylene, plastic, hot and cold water distribution system and/or hydronic radiant heating system made in one standard dimension ration ***and intended for a maximum 100 psi water service up to and including a maximum working temperature of 180° F***. Components are comprised of tubing and/or fittings. (emphasis added)

124.    The Class Pipe used in residential applications is also approved and used in commercial applications.  Commercial hot water PEX systems typically operate at temperatures higher than 140° for dishwasher and related equipment.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

125.   In the highly unlikely event that in residential properties water pressure exceeds 80 PSI or temperature in excess of 120°, those conditions will not cause the pipe to fail *as the pipe is expressly manufactured and IAPMO listed to tolerate 100* PSI *at 180° F*.

126.   All UPONOR PEX pipe contains a print line throughout the length of the pipe which identifies the pipe as Uponor, and among other things, reads "80 PSI 200°F". *This is the long-term pressure rating for the pipe at various temperatures and is far in excess of the typical residential water pressure at 80* PSI *or water temperature 120°F*.

## IX.   WATER TEMPERATURE AND WATER PRESSURE IN THE SYSTEM DO NOT CAUSE LEAKS IN THE CLASS PIPE

127.   On information and belief, Plaintiff alleges that UPONOR has falsely claimed to Putative Class members or their installers that water temperature and water pressure are the causes of failures in Class Pipe.

128.   The markings on the pipe uniformly state the pipe is manufactured to 80 PSI at 200°F.

129.   All UPONOR PEX pipe is IAPMO listed to tolerate 100 PSI.  This is 20 PSI in excess of the PSI used at residential properties.

130.   All UPONOR PEX pipe is IAPMO listed to tolerate 180°F, *a full 60°* in excess of the 120° F used in residential properties.

131.   UPONOR PEX piping is specifically approved for hot water *recirculation systems* including timed, sensor- activated, self-activated or *continuous hot-water circulation systems* operating at temperatures up to and including 140° F.

132.   UPONOR represents in its Residential Plumbing Installation Guide that its PEX pipe is designed to tolerate excessive temperature and pressure capability in accordance with ASTM F876. This standard requires that UPONOR PEX pipe, maintain its integrity for a period of 720 hours (30 days) at 210° F and 150 PSI.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

133.   UPONOR claims that, if installed as directed, UPONOR pipe will withstand these conditions.

134.   The water temperature of all residential properties is uniformly set at 120° or below with rare, if ever, irrelevant exceptions.

## X.    UPONOR PEX PIPE IS DESIGNED TO BEND AND BENDING THE PIPE DOES NOT CAUSE IT TO CRACK AND LEAK

135.   The UPONOR PEX pipe is flexible and designed to bend for ease of installation, and is advertised as such. Below is a photograph identified as Image 12 of a new role of PEX pipe in the original UPONOR packaging from the manufacturing plant.  The photograph demonstrates that the pipe is coiled like a garden hose and is designed, distributed and sold in this condition.



Image 12 – Uponor pipe in original packaging from manufacturer

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

136.    Furthermore, the pipe is designed to facilitate 90° bends.  Below is a photograph identified as Image 13 of the UPONOR support for a 90° bend.



Image 13 – Uponor support for 90° bend

137.    The signature failures leading to cracks and leaks have nothing to do with purportedly overbending the pipe.

**XI.    UPONOR HAS LITIGATED MANY LAWSUITS AND SETTLED MANY COMPLAINTS RELATING TO THE DEFECTIVE CLASS PIPE**

138.    UPONOR has been sued in several states across the United States for the defective UPONOR PEX pipe.  *To Plaintiff's knowledge, after reasonable research by his counsel, no class action has been filed in California relating to UPONOR PEX pipe*.

139.    On information and belief, UPONOR has known for many years that the Class Pipe is defective.  UPONOR has full knowledge of the defects, and of the risk to consumers of property damage and nonetheless continued to sell the Red and Blue pipe until 2021, and continues to sell the White pipe at this time.

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

140.   On information and belief, UPONOR stopped selling the Red and Blue pipe because it was well aware that its patented flame treatment prior to the application of the coating created a defect which further predisposed the pipe to premature failure.  UPONOR was aware of this defect long before it ceased selling the Red and Blue pipe.

141.   UPONOR's decision to continue selling its PEX pipe demonstrates its continued and conscious disregard of its long standing knowledge of the defects and reliable scientific evidence demonstrating the high probability of ongoing pipe failures causing resulting property damage and loss of use to consumers.

142.   UPONOR has continued to accrue knowledge of the defects, and their serious consequences, over the course of many years. Indeed, UPONOR has known about, investigated, and litigated numerous cases to develop full knowledge of the defects, supported by internal investigation and testing both inside the company and with the use of outside laboratories. These lawsuits and claims have caused UPONOR to develop a clear factual foundation to know without question that there are defects in the Class Pipe.

143.   On information and belief, despite obvious signs of known and dangerous defects and associated risks, UPONOR concealed claims and scientific findings of Class Pipe defects from consumers, distributors, contractors, installers and building officials.

144.   To date, UPONOR has taken no serious corrective action to pay for the removal and replacement of the defective pipe or to address these defects or to otherwise notify its distributors, installers, building officials or consumers of the defects and high probability of failure.

145.   On information and belief, UPONOR has insisted that there be confidentiality provisions in all settlement agreements.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## XII. UPONOR HAS FULL KNOWLEDGE ABOUT THOUSANDS OF REPORTED LEAKS IN THE CLASS PIPE

146. UPONOR has for many years been on notice of the Class Pipe defects and the resulting property damage *from consumer and installer reports of leaks*.

147. On information and belief, thousands of pipe failures have been reported to UPONOR by installers and property owners who have reported cracked and failed UPONOR PEX pipe with resulting property damage.

148. On information and belief, UPONOR monitors these reports of pipe failures.

149. Moreover, in many of these reports of failed pipe, it is expressly clear that UPONOR was directly informed of and investigated the leaks in question. While UPONOR has had access to the full body of these complaints for many years, it has failed and continues to refuse to warn its property owners or its installers or distributors of the known defects or to reasonably disclose the defects that repeatedly and perniciously manifest in the Class Pipe.

150. The exact time when UPONOR became aware of these defects will be established through discovery.

## XIII. DESPITE ITS KNOWLEDGE, UPONOR MISREPRESENTED AND CONCEALED IMPORTANT INFORMATION ABOUT THE CLASS PIPE DEFECT

151. For all consumers, including Plaintiff, durability, reliability and safety of potable water systems are important factors when buying a home, or selecting pipe when replacing one's potable water supply system. UPONOR capitalized on this fact in advertising about the Class Pipe and touted the superior qualities of the Class Pipe through marketing including durability, reliability and safety.

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

152.    Defendant has represented that UPONOR PEX pipe has superior resistance to stress-crack corrosion and that the pipe would not experience micro-cracking during expansion. These representations are material and deliberately false and misleading.

153.    UPONOR's knowledge of the defects is based on scientific evidence, generated by UPONOR and independent laboratories, as well as experts employed or retained by UPONOR, or which UPONOR learned of through lawsuits and independent reports of failed pipe and its own investigations.

154.    Plaintiff and Putative Class members, through their installers were exposed to these advertisements and promotional materials and representations prior to purchasing the Class Pipe. The misleading statements about the durability and safety of the Class Pipe in UPONOR's advertisements and promotional materials, as well as UPONOR's omission of the truth about the Class Pipe defects, influenced Plaintiff and Putative Class members through their installers to decide to purchase the Class Pipe.

155.    Despite its knowledge of the Class Pipe defects and the impact on reliability, UPONOR has concealed the defects and failed to replace the Class Pipe, and has thereby avoided the significant costs, inconveniences, and reputational harms of recalling millions of feet of defective pipe.

156.    UPONOR has hidden the defects despite its obligation to disclose it, misrepresented the Class Pipe to be reliable and safe, and continued to sell them to contractors and plumbers who installed the defective Class Pipe on behalf of consumers.

157.    Despite full knowledge of the problems with its pipe, UPONOR has failed to correct the defects and continues to market the defective pipe.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

158.    If UPONOR had instead chosen to disclose the truth about the defects to its developers, contractors and installers, Plaintiff and Putative Class members would have been informed about the defects *and would not have purchased or had the defective pipe installed in their homes*.

## XIV.    UPONOR PUBLISHED DESIGN AND PLUMBING INSTALLATION MANUALS FOR THE CLASS PIPE THAT DETAILED THE DURABILITY AND SAFETY FEATURES BUT DID NOT DISCLOSE THE OXIDATION DEFECT

159.    UPONOR published at least two manuals, with periodic updates: 1) the Uponor Plumbing Design Assistance Manual; and 2) the Uponor Professional Plumbing Installation Guide.  *The manuals specifically permit the installation of hot water recirculation systems.*

160.    A hot water recirculating system is a plumbing system that **circulates hot water to fixtures quickly without waiting for the water to get hot**.  This is done by installing a recirculating pump in the plumbing lines to create a loop that slowly and constantly circulates the water in the hot water pipes back into the water heater for reheating.

161.    Consumers prefer and enjoy hot water circulation systems because they produce instant hot water at the fixtures.

162.    On information and belief, the greatest number of failures of UPONOR PEX pipe are found in pipe used for hot water supply and continuous hot water circulation systems.  Yet, these failures are not disclosed to developers, contractors, distributors, installers or the public or potential customers.

163.    While UPONOR expressly advertises UPONOR PEX is suitable for use in all hot water continuous recirculation systems not exceeding 140°, it then states in its design and installation manuals the following:

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**Note: Uponor does not promote the use of continuous recirculation due to excessive energy waste**.

164. This statement is deliberately deceptive. These manuals uniformly omit any disclosure or warning about the defects in the UPONOR PEX pipe.

165. The hot water temperature in residential properties for continuous recirculation pipe is uniformly 120° or less, well below the UPONOR minimum engineered temperature tolerance level of 140°.

166. UPONOR has no legitimate basis to on the one hand advertise that its pipe is suitable for hot water use up to 140°, and to simultaneously state that hot water recirculation systems waste energy.

167. Rather than disclose the defects, and that heat from hot water *accelerates failures in the pipe*, UPONOR conceals this fact under the guise of trying to save energy. UPONOR fails to disclose its true motivation to cover up the fact that hot water accelerates oxidation and cracking in the Class Pipe because UPONOR was well aware that the pipe suffers from oxidative degradation starting with the initial manufacturing process, and then progresses to failure over time.

## XV.  THE DESIGN DEFECTS IN THE UPONOR PEX PIPE
   ### ARE THE SOLE CAUSE OF THE LEAKS

168. The leaks in UPONOR PEX pipe are not caused by installation practices or use by Putative Class members. The Class Pipe is defective and is the sole cause of the leaks and resulting damage. The Putative Class members cannot and have not done anything to contribute to the leaks caused by oxidative degradation or alter the causal chain of the defect.

169. ASTM International, formerly known as American Society for Testing Materials, promulgates performance standards. These standards do not guarantee performance. These standards describe standardized products. They are promulgated in order that consumers can expect minimum standardized products,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

such as length, diameter and short-term productivity. ***The standards do not purport to ensure longevity or long-term performance.***

170.  To the extent that UPONOR PEX pipe is in some form compliant with industry standards for manufacturing pipe, compliance with these standards would not prevent the defects in the Class Pipe, ***nor are the industry standards intended to ensure or guarantee that the pipe is properly designed or manufactured.***

171.  UPONOR PEX pipe is not reasonably designed and alternative non-defective designs were available that were safe, practical and economically feasible.

172.  There are no intervening or superseding causes to the defects in the Class Pipe.

173.  Also, there is no third-party fault by any third-party such as the distributors, contractors, installers or maintenance providers.

## XVI.  CLASS ACTION ALLEGATIONS

174.  This lawsuit seeks redress from UPONOR for the damages incurred when Plaintiff and proposed Putative Class members paid for the Class Pipe with known defects.

175.  This case is about UPONOR's legal responsibility for its knowledge, conduct, and defective products. The proposed Putative Class members' claims all derive directly from a single course of conduct by UPONOR. The objective facts are the same for all Putative Class members. Within each Count asserted by Plaintiff on behalf of himself and the proposed Putative Class, the same legal standards govern in California.

176.  Accordingly, Plaintiff brings this lawsuit as a class action on his own behalf, and on behalf of all other persons similarly situated, as members of the proposed Putative Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

provisions. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis.

### A.    The Class Definition

177.    The Putative Class consists of owners of residential property in California that contain or contained the UPONOR PEX Red, White and/or Blue piping manufactured and installed from 2010 to the present.

178.    The UPONOR PEX pipe was typically sold by UPONOR to plumbing distributors who in turn sold to plumbers or contractors who purchased and installed the UPONOR PEX pipe on behalf of Plaintiff and the Putative Class.

179.    The information presently available to Plaintiff shows that UPONOR continued to manufacture and sell the defective White pipe from 2010 through the present and reveal that UPONOR discontinued the manufacture and sale of the defective UPONOR PEX Red and Blue pipe from 2010 to 2021.

180.    The precise production period for the UPONOR Red, White and Blue PEX pipe is uniquely in the Defendant's hands, as only UPONOR possesses the information about the exact date of manufacture of the UPONOR PEX pipe. UPONOR has further information that will demonstrate the presence of the defects in the UPONOR PEX pipe and when and how it was designed and manufactured. Plaintiff and Putative Class members are unable to obtain precise information on their own from information publicly available.

181.    The proposed Putative Class definition is:

> All persons and entities that own residential properties in the state of California in which UPONOR PEX pipe manufactured and installed after 2010, or who replaced their UPONOR PEX pipe manufactured after 2010.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

182.   Excluded from the Putative Class are:

a.   All owners or former owners of UPONOR PEX pipe (Class Pipe) installed in residential properties that have asserted a claim pursuant to the requirements and terms of UPONOR's Express Warranty claim;

b.   Defendant's officers, directors and employees; Defendant's affiliates and affiliates' officers, directors, and employees; Defendant's distributors and distributors' officers, directors, and employees;

c.   All developers of homes in which UPONOR PEX pipe;

d.   All installers of UPONOR PEX pipe; and

e.   Judicial officers and their immediate family members and associated court staff assigned to this case.

183.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

**B.**   **Ascertainability**

184.   The names of all distributors of the UPONOR PEX pipe are available through discovery.  The names of all plumbers who purchased UPONOR PEX pipe from distributors are available through discovery.  The names of Putative Class members are available through discovery.

185.   There are well known and Court accepted notice plans that can identify and inform installers and consumers if they have the defective UPONOR PEX pipe and system.

186.   In addition, the ability of a Putative Class member to determine whether Class Pipe has been installed in a building is simple, with a very high degree of accuracy with no requirement for destructive testing to the building. The Class Pipe is also date coded and thus, the date of manufacturer can be determined. This ease of determining whether a property has the Class Pipe is based on the following facts:

### a.    All UPONOR PEX Pipe is Marked with the UPONOR Name.

187.   UPONOR PEX pipe is continuously labeled on the wall of all of its pipe. The markings are clear and easily readable. The UPC is adopted by the State of California and is uniformly applicated throughout the State of California. UPC section 301.2.1 requires that the name of the manufacturer be placed on the pipe. UPC Section 301.2.1 states:

> **Each length of pipe and each pipe fitting, trap, fixture, material, and device used in a plumbing system shall have cast, stamped, or indelibly marked on it any markings required by the applicable referenced standards and listing agency, and the manufacturer's mark or name, which shall readily identify the manufacturer to the end user of the product.** Where required by the approved standard that applies, the product shall be marked with the weight and the quality of the product. Materials and devices used or entering into the construction of plumbing and drainage systems, or parts thereof shall be marked and identified in a manner satisfactory to the Authority Having Jurisdiction. Such marking shall be done by the manufacturer. Field markings shall not be acceptable. (emphasis added)

188.   The UPONOR PEX system is not sold as pipe alone, but as a system which includes the pipe, fittings, and reinforcement rings which are sized and designed to be used only with UPONOR PEX pipe.

189.   When the Class Pipe is installed in a building, all of the pipe, reinforcement rings and fittings will have been manufactured by UPONOR.

190.   UPONOR's IAPMO Certificate of Listing requires that all the pipe be marked with the manufacturers name, size of pipe, code number identifying the compound and date of manufacture.   The certificate of listing reads, in part, as follows:

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

IDENTIFICATION:

**The tubing shall be marked with the manufacturer's name or trademark, ASTM F877 PEX, nominal size, standard dimension ratio, and a code number identifying the compound and the date of manufacturer.** The fittings shall be marked with the manufacturers name or trademark, pressure rating at 180 F and ASTM F877 or PEX when size permits."
(emphasis added)

    **b.**    **UPONOR PEX Pipe and Reinforcement Rings Can Be Easily Identified In Attics And In The Area of The Raised Foundation.**

191.    Residences are constructed in two manners, concrete slab on grade and raised foundations.  In structures that are slab on grade, the Class Pipe is installed in the attics with drops into the wall cavities for the various plumbing fixtures.  By looking into the attic, the Class Pipe is easily identified. If UPONOR PEX pipe is identified in the attic, then the entire PEX system will be UPONOR.  This observation requires no repairs or destructive work.



Uponor PEX reinforcement rings

Typical attic inspection showing Uponor PEX red and blue pipe and the reinforcement rings. The red pipe is cracked and leaking.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

192.   If the building has a raised foundation, then the UPONOR PEX pipe can also be identified in the crawl space.  If one section of Class Pipe is identified, then all of the PEX pipe will be UPONOR.  This observation requires no destructive work and requires no repairs.



193.   UPONOR utilizes an UPONOR PEX reinforcement ring at all fitting connections. This reinforcement ring is unique to UPONOR and is easily identifiable. These reinforcement rings can also be identified under a sink or toilet.  This observation requires no destructive work and requires no repairs.

**d.    UPONOR Angle Stops Are Easily Identified**

194.   If the installer plumbing contractor has used UPONOR they may have also used UPONOR angle stops.  These angle stops have been available throughout the proposed class period and fasten directly to the Class Pipe tubing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



Typical Uponor angle stop installed under a sink with Uponor reinforcement ring



Uponor angle stop (from catalog)

### e.    Uponor Manifold

195.    A plumbing manifold is a central distribution point for water supply lines, allowing for individual shut-off valves and easy access for maintenance.

196.    If the UPONOR system utilizes the UPONOR manifold system then identification of the UPONOR system can be easily accomplished because the manifolds are required to be accessible in order to be operated.  Typically, an access panel door is opened and the tubing and stops are readily visible for identification.  Also, the manifolds are connected directly to the UPONOR PEX pipe using the UPONOR reinforcement rings for the UPONOR cold-expansion fitting system.



Uponor manifold system

Uponor PEX White pipe

Uponor reinforcement rings

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

197.   The indentification of the product as Class Pipe is then easily documented with a photo using a camera or phone.

### f.    Additional Methods to Identify Installed Class Pipe

198.   In addition, all of the Putative Class members that have had a leak in their UPONOR PEX pipe, the plumber making the repair would have additional information confirming that the failed pipe was manufactured by UPONOR.

199.   In addition, any Putative Class member whose existing potable system was replaced would have personal knowledge that the replaced pipe was manufactured by UPONOR.

200.   Also, if the home of the Putative Class member was originally constructed with an UPONOR system, that information would be readily available to the Putative Class member by contacting their developer or installer and inquiring about what pipe was used for the potable water system.

201.   Also, established and Court approved class notice methodologies and programs can be uniquely designed to notify owners of residential properties to easily determine if they are class members.

202.   Plaintiff reserves the right to amend the Putative Class definitions if discovery and further investigation reveal that any Putative Class should be expanded, reduced, divided into additional subclasses under Rule 23(c)(5), or otherwise modified.

### C.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)

203.   The members of the Putative Class are so numerous and geographically dispersed that individual joinder of all Putative Class members is impracticable. There are thousands of Putative Class members in the state of California. The identities of the California Putative Class members may be ascertained as described above, and further from Defendant's records. Putative Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2

**D.**     <u>**Commonality and Predominance: Federal Rule of Civil**</u>

                   <u>**Procedure 23(a)(2) and 23(b)(3)**</u>

3      204.    This action involves common questions of law and fact, which

4 predominate over any questions affecting individual Putative Class members.

5 These include, without limitation, the following:

6          a.      Whether the UPONOR PEX White pipe manufactured

7 between 2010 and the present is defective;

8          b.      Whether the UPONOR PEX Red and Blue pipe

9 manufactured between 2010 and 2021 ("Class Pipe") is defective;

10          c.      Whether at the time the Class Pipe left the control of

11 Defendant, the UPONOR PEX pipe was defective in design and manufacture;

12          d.      Whether Defendant failed to warn consumers that the Class

13 Pipe that was manufactured between 2010 and the present is defective;

14          e.      Whether the UPONOR PEX pipe is subject to premature

15 failure, degradation, and/or deterioration;

16          f.      Whether Defendant made misleading statements in

17 connection with the advertising/marketing and/or sale of the Class Pipe that was

18 manufactured between 2010 and the present;

19          g.      Whether Defendant omitted material information when it

20 advertised/marketed and/or sold the Class Pipe that was manufactured between

21 2010 to the present;

22          h.      Whether Defendant knew, or should have known, about

23 the defects in its UPONOR PEX pipe, and, if so, how long it has or should

24 have known about the defects;

25          i.      Whether Defendant had a duty to disclose the defective nature of

26 the Class Pipe to Plaintiff and Putative Class members;

27          j.      Whether Defendant's concealment of the defects caused Plaintiff

28 and Putative Class members to act to their detriment by purchasing the Class Pipe;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

k.     Whether Defendant concealed the defects in the Class Pipe;

l.     Whether Defendant's statements, concealments, and omissions regarding the Class Pipe were material, in that a reasonable consumer could consider them important in purchasing, installing and using the Class Pipe;

m.     Whether Defendant's conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

n.     Whether Defendant engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Pipe was defective as designed, manufactured and sold;

o.     Whether Defendant's concealment of the true defective nature of the Class Pipe caused its market price to incorporate a premium reflecting the assumption by consumers that the Class Pipe was not defective and was fully functional for use in residential properties and, if so, the market value of that premium;

p.     Whether Plaintiff and the other Putative Class members are entitled to damages, including punitive damages, and other monetary or restitutionary relief and, if so, in what amount; and

q.     Whether Plaintiff and other Putative Class members are entitled to an order enjoining the Defendant from further deceptive distribution and sales practices with respect to the Class Pipe.

205.   These and other common questions of law and fact predominate over any questions affecting solely individual members of the Putative Class.

**E.     <u>Typicality: Federal Rule of Civil Procedure 23(a)(3)</u>**

206.   Plaintiff's claims are typical of the claims of Putative Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiff and each Putative Class member own a residential property in which the defective Class Pipe was installed, or owned residential property in which failed UPONOR PEX

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

pipe was removed and replaced, and were comparably injured through Defendant's wrongful conduct as described above. Plaintiff and the other Putative Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other Putative Class members. Plaintiff's claims are based upon the same legal theories as the claims of the other Putative Class members.

**F.    Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

207.    Plaintiff will fairly and adequately represent and protect the interests of the Putative Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff's interests do not conflict with the interests of the Putative Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation and consumer protection litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor his counsel has interests that conflict with the interests of the other Putative Class members. Therefore, the interests of the Putative Class members will be fairly and adequately protected.

**G.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

208.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Putative Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Putative Class as a whole.

**H.    Superiority: Federal Rule of Civil Procedure 23(b)(3)**

209.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiff and the other Putative Class members are relatively small compared to the burden and expense that would be required to individually litigate

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

their claims against Defendant such that it would be impracticable for members of the Putative Class to individually seek redress for Defendant's wrongful conduct.

210.    Even if Putative Class members could afford individual litigation, the court system could recognize the class procedural device as superior to individualized litigation. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## XVII. ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

211.    Plaintiffs' claims and all Putative Class members' claims are brought within the applicable statutes of limitations.

212.    Plaintiffs' and Putative Class members' claims are not barred by any statute of limitation or statute of repose because Defendant actively and fraudulently concealed from the public including Plaintiff and other Putative Class members (i) the defects in the Class Pipe, (ii) Defendant's actions in creating the defects, and (iii) the cause of Plaintiffs' and the Putative Class members' damages and injury in fact.

213.    On information and belief, Defendant has known of the defects in the Class Pipe for many years, because UPONOR learned, through reports of failed pipe and internal testing, investigation and analysis that the UPONOR PEX pipe was cracking and leaking including through its own books, records, and personnel. Nonetheless, UPONOR continued to manufacture and sell the defective Class Pipe. UPONOR obtained further knowledge of the risks of the Class Pipe defects from numerous consumer lawsuits, and consumers and installer claims relating to cracked and leaking Class Pipe, occurring in many locations throughout the United States, which provided additional and confirmatory notice to UPONOR of the Class Pipe defects.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

214.   Discovery relating to all nationwide reports of leaks made to UPONOR are relevant to this California Putative Class as those reports are relevant to when UPONOR was on notice of the defects and what UPONOR knew, and Plaintiff requests such discovery.

215.   UPONOR had a duty to disclose the Class Pipe defects to consumers. Instead, UPONOR knowingly, affirmatively, and actively concealed the defects from consumers by continuing to manufacture, distribute and sell the Class Pipe to installers who then sold Plaintiff and the Putative Class members; to advertise the efficacy of the Class Pipe; and to fail to notify Plaintiff and the Putative Class members about the true nature of the defective Class Pipe.

216.   As of the date of this Complaint, UPONOR still has not disclosed, and continues to conceal, that the Class Pipe is defective, and that the Class Pipe will continue to prematurely fail in the future.   Despite its knowledge of the Class Pipe defects and its attendant risks, UPONOR continues to market the Class Pipe based on alleged superior quality and reliability while omitting the disclosure of the defects and reliability risks associated with the Class Pipe defect.

217.   Defendant affirmatively concealed the injuries to Plaintiff and other Putative Class members by concealing that the Class Pipe has defects that cause leaks and/or by failing to disclose material facts regarding the defects when Defendant had a duty to disclose such information to the Putative Class members who would be reasonably expected to have plumbing installed in their homes or structures and/or to builders and plumbers who were reasonably expected to use such Class Pipe, based on (1) Defendant's superior and sole knowledge related to the defects, and (2) Defendant's continuous statements to the public, builders, building officials and plumbers about the quality of Class Pipe as set forth herein.

218.   Between 2010 and the present, Defendant made public statements and publicly maintained that the Class Pipe was the highest quality PEX pipe available, that its cross chemical bonding process gave it superior characteristics, that Class

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Pipe has superior resistance to stress-crack corrosion and that Class Pipe will suffer no micro-cracking during expansion, and that consumers should trust Defendant to provide the highest quality UPONOR PEX pipe because the company has many years of industry experience and is an industry leader in the manufacture of UPONOR PEX pipe. These statements to the public were affirmative acts of concealment of the defects in the Class Pipe, of which Defendant was aware.

219.  On information and belief, Defendant knew that the Class Pipe was defective and caused leaks and damages for many years. Defendant knew that property owners were being injured by the defects in Class Pipe not long after Defendant started manufacturing the Class Pipe.  Defendant knew that it was the wrongdoer who created the defects in Class Pipe.

220.  Defendant engaged in a scheme to cover up evidence of premature deterioration and failure of Class Pipe by occasionally providing reimbursement for spot repairs of the Class Pipe when leaks were reported and not notifying all potentially affected persons of such deterioration and progressive failure modalities of Class Pipe.

221.  Between 2010 and the present, Defendant did not notify the public of defects in the Class Pipe, but affirmatively conducted a plan to conceal claims of property owners. Defendant conducted a plan to continue making public statements about the Class Pipe being of highest quality, and to occasionally provide reimbursement for repairs of faulty and failed Class Pipe on a case-by-case basis when a failure was reported instead of notifying potential owners, builders, and plumbers of the defects in the Class Pipe.

222.  Defendant's actions and statements concealed the fact of the defects in the Class Pipe and were intended by Defendant to exclude suspicion and prevent inquiry regarding defects in the Class Pipe.

223.  Plaintiff and other Putative Class members had no way to know of the defects in the Class Pipe because the UPONOR PEX piping and its defects are latent

1  and the leaks manifest behind the walls and ceilings of the homes and other

2  structures of Plaintiff and other Putative Class members.

3      224.   Plaintiff and members of the proposed Putative Class could not have

4  discovered through the exercise of reasonable diligence that UPONOR was

5  concealing the Class Pipe defects and misrepresenting the defective nature of the

6  Class Pipe.

7      225.   With respect to Class Pipe that has not yet experienced cracks and leaks

8  Putative Class members did not discover, could not reasonably have discovered, and

9  had no reason to suspect that their Class Pipe is defective.

10     226.   The continued use of the Class Pipe is compromised by these defects

11  such that the Class Pipe is likely to prematurely fail and cause property damage, and

12  that, as a result of the foregoing, they overpaid for their pipe, and/or the value of

13  their pipe is diminished.

14     227.   With respect to Class Pipe that has experienced cracks and leaks prior

15  to the filing of this Complaint, Putative Class members did not discover and could

16  not reasonably have discovered that such failure was due to defects known to

17  UPONOR.

18     228.   Plaintiff and other Putative Class members did not discover, and did not

19  know of, facts that would have caused a reasonable person to suspect that UPONOR

20  did not report this material information within their knowledge to consumers,

21  installers, or relevant authorities; nor would a reasonable and diligent investigation

22  have disclosed that UPONOR was aware of the defective nature of the Class Pipe.

23     229.   Due to the highly technical nature of the Class Pipe defect, Plaintiff and

24  Putative Class members were unable to independently discover it using reasonable

25  diligence. Absent counsel and retained consultants with relevant expertise, Plaintiff

26  and Putative Class members lack the necessary expertise to analyze the design and

27  manufacturing methods of the Class Pipe, and to understand its defective nature.

28  / / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

230.   UPONOR has not issued a recall or issued other similar public statements about the Class Pipe defects, and Plaintiff first learned of the defective nature of the Class Pipe defect, and of UPONOR's scheme to design and sell defective Class Pipe, only after he had multiple failures and then in connection with retaining counsel and filing this lawsuit.

231.   For the foregoing reasons, UPONOR is estopped from relying on any statutes of limitation or repose as a defense in this action. All applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by UPONOR's intentional concealment with respect to all claims against UPONOR.

## XVIII.    CAUSES OF ACTION

232.   Plaintiff and the Putative Class make **no** claim under any UPONOR Express Warranty or any implied warranty and are not seeking relief provided for in the UPONOR Express Warranty, or any implied warranty under law.

233.   Plaintiff further states that, in any event, UPONOR's Express Warranty does not apply to him because it was never provided to him; that he was unaware of any Express Warranty; that he never agreed or assented to any Express Warranty with UPONOR; and that he has never made a claim under the UPONOR Express Warranty, or any implied warranty under law, and is not bound by the terms of any UPONOR Express Warranty.

234.   Because UPONOR failed to provide Plaintiff or the Putative Class any UPONOR Express Warranty, UPONOR is estopped from asserting any rights under the terms of any UPONOR Express Warranty.

235.   Plaintiff alleges that he, and the Putative Class members, are not assignees of any UPONOR Express Warranty, and that no rights pursuant to an UPONOR Express Warranty have ever been transferred to Plaintiff or the Putative Class.

236.   Plaintiff and the Putative Class are not seeking to enforce any rights as a third-party beneficiary, if any such rights exist.

## COUNT I:

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.)

237. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

238. Plaintiff brings this claim on behalf of himself and the California State Putative Class against the Defendant.

239. The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

240. Defendant's knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendant's conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.      by knowingly and intentionally concealing from Plaintiff and California State Putative Class members that the Class Pipe suffers from defects while obtaining money from the California State Putative Class members through the sale of the Class Pipe;

b.      by marketing Class Pipe as possessing a functional, safe, and defect-free water supply system;

c.      by designing and manufacturing the Class Pipe to contain a design and manufacturing defects causing the Class Pipe to crack and leak and prematurely fail contrary to what was disclosed and represented to consumers and/or installers who purchased Class Pipe, and failing to replace defective Class Pipe free of charge; and

d.      by violating the other California laws alleged herein, including the False Advertising Law and the Consumers Legal Remedies Act.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

241.   Defendant, the California Plaintiff, and California State Putative Class members are "persons" within the meaning of the Cal. Bus. and Prof. Code § 17201.

242.   Defendant's misrepresentations, omissions, and concealment were material to the California Plaintiff and California State Putative Class members, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

243.   Defendant's material misrepresentations and omissions alleged herein caused Plaintiff and the California State Putative Class members to make their purchases of their Class Pipe. Absent those misrepresentations and omissions, Plaintiff and California State Putative Class members would not have purchased the Class Pipe.

244.   Accordingly, Plaintiff and California State Putative Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and their concealment of and failure to disclose material information.

245.   Defendant's violations present a continuing risk to Plaintiff and California State Putative Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

246.   Plaintiff requests that this Court enter an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices and restoring to members of the California State Putative Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COUNT II:**

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

247.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

248.    Plaintiff brings this claim on behalf of himself and the California State Putative Class against the Defendant.

249.    Plaintiff and California State Putative Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

250.    Defendant, the California Plaintiff, and California State Putative Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

251.    The Class Pipe are "goods" within the meaning of Cal. Civ. Code § 1761(a).

252.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

253.    Defendant engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, intentionally and knowingly made materially false representations regarding the reliability and performance of the Class Pipe as detailed above.

254.    Specifically, by misrepresenting the Class Pipe as reliable and/or free from defects, and by failing to disclose and actively concealing the risk of premature failure posed by the Class Pipe, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

     a.    Representing that the Class Pipe had characteristics, uses, benefits, and qualities which it does not have.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

b.      Representing that the Class Pipe is of a particular standard, quality, and grade when it is not.

c.      Advertising the Class Pipe and/or with the intent not to sell the Class Pipe as advertised.

d.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

255.    Additionally, in the various channels of information through which Defendant sold and marketed Class Pipe, Defendant failed to disclose material information concerning the Class Pipe, which they had a duty to disclose. Defendant had a duty to disclose the defects because, as detailed above: (a) Defendant knew about the defects in the Class Pipe; (b) Defendant had exclusive knowledge of material facts not known to the general public or the other California State Putative Class members; (c) Defendant actively concealed material facts concerning the Class Pipe defects from the general public, Plaintiff and California State Putative Class members; and (d) Defendant made partial representations about the Class Pipe that were misleading because they did not disclose the full truth.

256.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and California State Putative Class members, about the reliability of Class Pipe, the quality of the Class Pipe, and the true value of the Class Pipe.

257.    Plaintiff and the other California State Putative Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions. Plaintiff paid out of pocket expenses to paint drywall that replaced existing drywall damaged by failure in the Class Pipe installed in his home. Plaintiff will also pay significantly more out of pocket expenses to properly repaint the entire

walls in which the damaged drywall was patched and temporarily repainted, and to remove and replace all of the Class Pipe installed in his residential property. This Complaint will be amended to provide the exact amount of the costs to remove and replace all of the UPONOR PEX pipe from his residence.

258.   Defendant's violations present a continuing risk of further property damage and safety risks to Plaintiff and California State Putative Class members, as well as to the general public, and therefore affect the public interest.

259.   Defendant is on notice of the issues raised in this count and this Complaint by way of, among other things, litigation and hundreds if not thousands of public consumer reports of failed pipe detailed above, as well as its own intrinsic knowledge of defects it has included in the Class Pipe by design. On November 8, 2024, Plaintiff also sent a notice letter to Defendant in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendant of its alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendant correct or agree to correct the actions described therein within thirty (30) days of the notice letter. Defendant did not correct or agree to correct its actions within thirty days, and Plaintiff therefore seek compensatory and monetary damages to which Plaintiff and California Putative Class members are entitled under the CLRA.

260.   Attached hereto and filed concurrently herewith as **Exhibit A-001 through 002** is Plaintiff's venue affidavit required by CLRA, Cal. Civ. Code § 1780(d).

## COUNT III:

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
## (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)

261.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

262.   Plaintiff brings this claim on behalf of himself and the California State Putative Class against the Defendant.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

263.   The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, prohibits false advertising.

264.   Defendant, the California Plaintiff, and California State Putative Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

265.   Defendant violated the FAL by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the reliability of the Class Pipe that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and installers of the defective UPONOR PEX pipe, including California State Putative Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

266.   The misrepresentations and omissions regarding the reliability of Class Pipe as set forth in this Complaint were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and California State Putative Class members, about the true reliability of Class Pipe, the quality of the Defendant's brand, and the true value of the Class Pipe.

267.   In purchasing their Class Pipe, the California State Putative Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability and durability of the Class Pipe. Defendant's representations turned out not to be true and the omissions of material facts because the Class Pipe is distributed with a defect, rendering the Class Pipe defective and unsuitable for use in a residential water supply system.

268.   Plaintiff and the other California State Putative Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. Had they known the truth,

1  Plaintiff and California State Putative Class members would not have purchased the
2  Class Pipe.

3      269.   Plaintiff and California State Putative Class members had no way of
4  discerning that Defendant's representations were false and misleading, or otherwise
5  learning the facts that Defendant had concealed or failed to disclose. Plaintiff and
6  California State Putative Class members did not, and could not, unravel Defendant's
7  deception on their own.

8      270.   Defendant had an ongoing duty to Plaintiff and California State Putative
9  Class members to refrain from unfair or deceptive practices under the California
10 False Advertising Law in the course of their business. Specifically, the Defendant
11 owed Plaintiff and California State Putative Class members a duty to disclose all the
12 material facts concerning the defects in the Class Pipe because they possessed
13 exclusive knowledge, they intentionally concealed the defects from Plaintiff and
14 California State Putative Class members, and/or they made misrepresentations that
15 were misleading because they were contradicted by withheld facts.

16     271.   All of the wrongful conduct alleged herein occurred, and continues to
17 occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part
18 of a pattern or generalized course of conduct that is still perpetuated and repeated,
19 in the State of California.

20     272.   Defendant's violations present a continuing risk to Plaintiff and
21 California State Putative Class members, as well as to the general public.
22 Defendant's unlawful acts and practices complained of herein affect the public
23 interest.

24     273.   Plaintiff requests that this Court enter an order enjoining Defendant
25 from continuing its unfair, unlawful, and/or deceptive practices and restoring to the
26 California State Putative Class any money Defendant acquired by unfair
27 competition, including restitution and/or restitutionary disgorgement, and for such
28 other relief set forth below.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COUNT IV:**

**FRAUD BY CONCEALMENT**

**(COMMON LAW)**

274.   Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

275.   Plaintiff brings this claim against Defendant on behalf of himself and the California State Putative Class under the common law of fraudulent concealment.

276.   Defendant is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

277.   Defendant intentionally and knowingly concealed and suppressed material facts from consumers regarding the Class Pipe defects causing a serious risk of property damage.

278.   A reasonable consumer would not have expected that the Class Pipe contained defects that would cause premature cracking and leaking.  Defendant knew that reasonable consumers expected that their Class Pipe would be without defects and would rely on those facts in deciding whether to purchase and install the Class Pipe. Whether a manufacturer's products are reliable and whether that manufacturer stands behind its products, are material concerns to a consumer.

279.   Defendant ensured that Plaintiff and the Putative Class did not discover this information by actively concealing and misrepresenting the true nature of the Class Pipe defect. Defendant intended for Plaintiff and the Putative Class to rely on their omissions—which they did by purchasing homes in which the UPONOR PEX pipe was installed or purchased the Class Pipe through their installers of Class Pipe at the prices they paid.

280.   Defendant had a duty to disclose the Class Pipe defects because:

a.      UPONOR had exclusive and/or far superior knowledge and access to the facts about these hidden and complex defects. Defendant also knew that

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

these technical facts were not known to or reasonably discoverable by Plaintiff and the Putative Class; UPONOR knew the Class Pipe defects and the risks to property damages was a material fact that would affect Plaintiff's or Putative Class members' decisions to buy Class Pipe; UPONOR is subject to statutory duties to disclose known defects to consumers; UPONOR's actions to avoid investigations and a recall due to the defects deprived consumers of an opportunity in which they could have learned about it; and UPONOR made incomplete representations about the reliability of the Class Pipe, while purposefully withholding material facts about a known defect. In uniform advertising and materials, Defendant intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Putative Class that the Class Pipe contained defects that would cause premature failure. Because it volunteered to provide information about the Class Pipe that it offered for sale to Plaintiff and the Putative Class, either through its developers, contractors, sellers of the property, or installers, Defendant had the duty to disclose the whole truth. It did not.

281.   To this day, Defendant has not made a full and adequate disclosure and continues to conceal material information regarding the Class Pipe defects. The omitted and concealed facts were material because a reasonable person would find them important in purchasing Class Pipe and because they directly impact the value and reliability of the Class Pipe purchased and/or installed by Plaintiff and the Putative Class.

282.   Defendant actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their Class Pipe, to protect profits, and to avoid costly recalls that would hurt the UPONOR brand's image and reduce profits. It did so at the expense of Plaintiff and the Putative Class. Had they been aware of the defects in the Class Pipe, and Defendant's callous and conscious disregard for safety and risk of property damage, Plaintiff and the Putative Class would not have purchased the Class Pipe.

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

283.   Accordingly, Defendant is liable to Plaintiff and the Putative Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Pipe at the time of purchase and/or the cost of replacing all Class Pipe in their property.

284.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiff's and the Putative Class's rights and well-being; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## COUNT V:

## UNJUST ENRICHMENT

## (COMMON LAW)

285.   Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

286.   Pleading in the alternative, UPONOR has been unjustly enriched in that UPONOR received the purchase price of the Class Pipe, a benefit which Defendant retained at Plaintiff's expense.

287.   During on or about February, 2014, Plaintiffs paid $9,000.00 to have Integrity Repipe purchase and install Class Pipe in their residential property.

288.   UPONOR did not sell its Class Pipe directly to residential end users.

289.   All Class Pipe, including that purchased by Plaintiff, was sold by UPONOR through approved distributors.

290.   In 2014, Plaintiff hired Integrity Repipe to replace his potable water system.  Integrity Repipe agreed to install Plaintiff's Class Pipe in Plaintiffs' property and did so on or about January, 2015.   Plaintiff's only contact in the transaction to acquire the Class Pipe was through Integrity Repipe.

291.   Integrity Repipe then paid the plumbing distributor Ferguson using Plaintiff's money, for the cost of the Class Pipe and materials to be purchased by

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Integrity Repipe to replace Plaintiff's potable water supply system.  UPONOR's largest distributor in California and the United States is Ferguson Enterprises, Inc. ("Ferguson"). Integrity Repipe bought the Class Pipe from Ferguson to be used on Plaintiff's residential property with Plaintiff's money.

292.  Plaintiff's money to purchase the Class Pipe was paid to Integrity Repipe who paid the distributor Ferguson from whom Integrity Repipe purchased the Class Pipe.  Ferguson then paid Uponor, Inc.

293.  In this fashion, the benefit of Plaintiff's money, namely the purchase price of the Class Pipe, was conferred on Uponor, Inc. and retained by Uponor, Inc.  through the above-described distribution channels for Plaintiff's Class Pipe.

294.  All of the Class Pipe was sold to consumers or end-users in some variation of the above system, namely consumer pays the developer, contractor or installer to buy the Class Pipe, who buys the Class Pipe from the distributor, who pays Uponor, Inc. This Complaint will be amended if the evidence shows that Defendant Uponor, Inc. passes some or all of the profit either to Uponor North America, Inc., or Uponor Corporation or both.

295.  The benefit that Plaintiff conferred on Uponor, Inc. and that Uponor, Inc.  retained at Plaintiff's expense was the purchase price of Class Pipe. The chain of distribution of Plaintiff's Class Pipe and the monetary compensation for the Class Pipe followed a pattern that is typical to all sales of Class Pipe.

296.  Thus, Uponor, Inc., was paid with Plaintiff's money indirectly through its distributor Ferguson.  The benefit of the purchase price was conferred on Uponor, Inc., or other Uponor entities and retained at Plaintiff's expense.

297.  As between Plaintiff and Uponor, Inc., it is unjust for Uponor, Inc. to retain the benefit conferred upon it by Plaintiff in that Plaintiff paid $9,000.00 for the installation of the Class Pipe based upon the promises from Uponor, Inc.  that the Class Pipe would be free from defects and would safely supply water to his residence, none of which were delivered or fulfilled as promised by Uponor, Inc.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1
2
3
4

**COUNT VI:**

**NEGLIGENCE**

**(PLAINTIFF, ON BEHALF OF HIMSELF AND ALL OTHERS**

**SIMILARLY SITUATED, AGAINST DEFENDANT)**

5    298.   Plaintiff re-alleges and incorporates by reference all paragraphs as
6  though fully set forth herein.

7    299.   Defendant owed Plaintiff and the other members of the Putative Class
8  a duty to exercise reasonable and ordinary care in the testing, design, manufacture,
9  distribution, advertising/marketing, and/or sale of the Uponor PEX pipe.

10    300.   Defendant negligently, carelessly, tortiously, and/or wrongfully
11  failed to use reasonable care in the testing, design, manufacture, distribution,
12  advertising/marketing, and/or sale of the Uponor PEX pipe in the homes and other
13  structures owned by Plaintiff and the other members of the Putative Class.

14    301.   Defendant knew or should have known that owners of homes and
15  other structures with Uponor PEX pipe, including Plaintiff's and the other
16  members of the Putative Class, would be substantially damaged thereby, as alleged
17  herein.

18    302.   The use of Uponor PEX pipe has resulted in or will result in
19  foreseeable property damage as alleged herein which damages include costs to
20  repair damages to the homes, and other structures of Plaintiff and the Putative
21  Class caused by leaks, and the cost to remove and replace the defective UPONOR
22  PEX pipe.

23    303.   Defendant was under a duty to exercise ordinary care to avoid
24  reasonably foreseeable injury to purchasers of UPONOR PEX pipe and purchasers
25  of homes and other structures, and knew or should have foreseen with reasonable
26  certainty that purchasers and/or end users would suffer the damages set forth herein
27  if Defendant failed to perform its duty to cause the Uponor PEX pipe to be tested,

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

designed, manufactured, distributed, advertised/marketed, and/or sold in a non-defective manner.

304.    Defendant failed and neglected to properly test, design, manufacture, distribute, advertise/market, and/or sell Uponor PEX pipe in that Defendant so negligently, carelessly and in an unworkmanlike manner performed the aforesaid work such that Uponor PEX pipe was tested, designed, manufactured, distributed, advertised/marketed, and/or sold improperly, negligently, carelessly and/or in a defective and unworkmanlike manner.

305.    Plaintiff and the other members of the Putative Class are lay people and lack the knowledge, understanding, and ability to understand whether the lines and components of the plumbing systems have any defects. Plaintiff and the other members of the Putative Class lack any reasonable ability to test the Uponor PEX pipe to know whether a defect exists.

306.    Defendant's negligence is a substantial factor in causing the damages as alleged herein.

307.    As a direct and proximate result of the conduct described herein, Plaintiff and the members of the Putative Class have suffered damages, including damages to property other than the Uponor PEX pipe, in an amount precisely unknown, and according to proof at trial.

308.    As a direct and proximate result of Defendant's negligence, carelessness, and breaches of its duty of reasonable and ordinary care, Plaintiff and the Putative Class have been caused to suffer losses and damages, including damage to their homes due to leakage from the defective Uponor PEX pipe and the cost of removal and replacement of the defective Uponor PEX pipe and other incidental and consequential expenses associated with the failure of Uponor PEX pipe, all of which damages were foreseeable by Defendant.

/ / /

/ / /

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COUNT VII**

**STRICT PRODUCT LIABILITY**

309.   Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

310.   At all times material to this action, Defendant was engaged in the process of designing, engineering, developing, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, selling, and supplying Uponor PEX pipe in California.

311.   At the time the Uponor PEX pipe left the control of Defendant, it was defective in design and manufacture and unreasonably defective and dangerous to Plaintiff and the other members of the Putative Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described hereinabove.

312.   The Uponor PEX pipe was expected by Defendant to reach, and did reach, property owners/end users without substantial change in the condition in which it was placed on the market and was expected to be installed in the homes and other structures of Plaintiff and other members of the Putative Class.

313.   Defendant, as the designer and manufacturer of Uponor PEX pipe, is held to the level of knowledge of an expert in the field of the design and manufacture of Uponor PEX pipe including any cracking, microcracking, oxidative degradation, deterioration, weakening, failure or leaks caused by a furnace/flame treatment and/or the application of coatings and adhesives to the PEX pipe, and failure of the fitting installation design system.

314.   Plaintiff and the other members of the Putative Class were persons who would be expected to use Uponor PEX pipe in the potable water system in their homes and other structures.

315.   The defects in the Uponor PEX pipe used in the homes and other structures of Plaintiff and the other members of the Putative Class were a direct and

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

proximate cause of the damages alleged herein sustained by Plaintiffs and the members of the Putative Class.

316.   Defendant is strictly liable to Plaintiff and the Putative Class for the damages alleged herein caused by the defects and inadequacies in the design, manufacture and sale of Uponor PEX pipe.

## XIX. **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, request for the Court to enter judgment against the Defendant, as follows:

a.   An order certifying the proposed Putative Class, designating Plaintiff as the named representative of the Putative Class, designating Class Counsel, and making such further orders for the protection of Putative Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

b.   An award to Plaintiff and Putative Class members of costs, restitution, compensatory damages, out-of-pocket costs, damages, and punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

c.   An order enjoining the Defendant to desist from further deceptive distribution and sales practices with respect to the Class Pipe and such other injunctive relief that the Court deems just and proper;

d.   A declaration that Defendant is financially responsible for all Putative Class notice and the administration of Putative Class relief;

e.   An award all costs of suit, costs of notice, forensic investigation and analysis costs, and fees of experts, including engineering, design, formulation, PEX, testing, and construction experts;

f.   Any applicable statutory and civil penalties;

g.   An award of costs and attorneys' fees, as allowed by law;

h.   An order requiring Defendant to pay both pre-judgement and post-judgment interest on any amounts awarded.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    i.    Leave to amend this Complaint to conform to the evidence
2   produced during discovery or at trial; and

3    j.    Such other or further relief as the Court may deem appropriate,
4   just, and equitable under the circumstances.

5   **XX.    DEMAND FOR JURY TRIAL**

6        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by
7   jury of any and all issues in this action triable by a jury.

8   Dated: May 20, 2025                **BIRKA-WHITE LAW OFFICES**

9                                By:  */s/ David M. Birka-White*
10                                     David M. Birka-White

11                                David M. Birka-White, CA SBN 85721
12                                dbw@birka-white.com
                                  BIRKA-WHITE LAW OFFICES
13                                178 E. Prospect Avenue
                                  Danville, California 94526
14                                (925) 362-9999 (tel.) / (925) 362-9970 (fax)

15

16                                **BERDING & WEIL LLP**

17                                By:  */s/ Daniel L. Rottinghaus*
18                                     Daniel L. Rottinghaus

19                                Daniel L. Rottinghaus, CA SBN 131949
20                                Drottinghaus@berdingweil.com
                                  Scott M. Mackey, CA SBN 222217
21                                smackey@berdingweil.com
                                  BERDING & WEIL LLP
22                                2175 N. California Blvd, Suite 500
23                                Walnut Creek, California 94596
24                                925/838-2090 (tel.) / 925/820-5592 (fax)

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

**LEVIN SEDRAN & BERMAN**

2

Charles E. Schaffer, PA SBN 76259

3

  cschaffer@lfsblaw.com
LEVIN SEDRAN & BERMAN

4

510 Walnut Street, 5th Floor
Philadelphia, Pennsylvania 19106

5

(215) 592-1500 (tel.) / (215) 592-4663 (fax)

6

Attorneys for Plaintiff

7

EDWARD P. CLIFFORD,

8

on behalf of himself and all others
similarly situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# <u>TABLE OF CONTENTS OF EXHIBITS</u>

Exhibit A: Plaintiff's CLRA Venue Affidavit……………………..…………001-002

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF